**EFiled: Aug 31 2015 03:08PM EDT**
**Transaction ID 57793126**
**Case No. 9682-VCN**

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

August 31, 2015

Kathaleen S. McCormick, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

Kenneth J. Nachbar, Esquire
Susan W. Waesco, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19801

Re:  *In re Duke Energy Corporation Coal Ash Derivative Litigation*
     Consolidated C.A. No. 9682-VCN
     Date Submitted: May 5, 2015

Dear Counsel:

Plaintiffs have sued current and former directors of Duke Energy Corporation (the "Company") for alleged fiduciary failings which are said to have caused (or partly caused) certain coal ash releases in North Carolina, exposing the Company to civil, criminal, and regulatory liability. The Defendants have moved to stay this action while the Company defends against parallel litigation involving the same underlying factual allegations.

Although the Company's criminal liability has been resolved, several regulatory enforcement actions (brought by the North Carolina Department of Environment and Natural Resources) and several Clean Water Act[1] lawsuits filed by environmental groups remain (the "related litigation"). Also, a declaratory judgment action has been brought to clarify how North Carolina groundwater protection rules apply to coal ash basins. These cases all involve the Company's maintenance and oversight (through its subsidiaries) of coal ash ponds in North Carolina.

Dealing with substantive lawsuits that expose the Company to significant potential liability at the same time as a derivative action challenging the directors' conduct will prejudice the Company, and thus its shareholders, in its defense of the related litigation. Although the need for a stay is reduced by resolution of the criminal charges, the remaining actions involve a substantial factual overlap with the claims presented in this derivative action. The related litigation involves allegations that the Company's conduct (leading to the coal ash releases) had foreseeable consequences. The derivative plaintiffs make similar allegations—on behalf of the

---

[1] 33 U.S.C. § 1251, *et seq.* State law claims are also asserted.

Company—against the Company's directors. Tension exists between the Company's defense of the related litigation and the Company's accusing (through the derivative plaintiffs) its directors of the same general conduct. Moreover, prior determination of the Company's liability in the related litigation will facilitate processing of the derivative action. Finally, the Plaintiffs have not set forth a persuasive explanation for why a stay of limited duration would prejudice their case.

The Court has the discretion to stay derivative litigation while related actions involving the same events or conduct which address the liability of the Company are processed.[2]

Although a stay of this action pending resolution of the related litigation makes practical sense, a lengthy stay may not be warranted. First, if the related litigation becomes bogged down, it would be unfair to the Plaintiffs, and the Company's shareholders for that matter, to wait an extended period of time. Second, at some point, extended delay may generate some prejudice because of the

---

[2] *See, e.g.*, *In re Massey Energy Co. Deriv. Litig. and Class Action Litig.*, C.A. No. 5430-CS, at 8-12 (Del. Ch. June 15, 2012) (Transcript); *Brenner v. Albrecht*, 2012 WL 252286, at *4 (Del. Ch. Jan. 27, 2012).

inevitable slippage of recollection and challenges in maintaining the useful records and documents.[3]

Plaintiffs have asserted a few other arguments against a stay that deserve comment. First, they suggest that the director defendants are "too interested" to move for a stay. The purpose of the stay, however, is to benefit the Company: to reduce the risk and uncertainty that might result from defending itself in the related litigation while at the same time (even if the claims are asserted by derivative plaintiffs) suing the directors who may have been responsible for the conduct that gave rise to the related litigation. No determination yet has been made as to whether the directors, through their conduct, have lost the presumptions of the business judgment rule. Until that occurs, at least as a general matter, the current directors remain responsible for managing the business and affairs of the Company.

Second, Plaintiffs have attempted to formulate a discovery and motion process that can allow progress in this action while minimizing the problems that it

---

[3] The Company has (as it should have) attempted to preserve the relevant evidence. Those efforts may minimize the risks; they do not eliminate the risks.

might cause with respect to the related litigation.[4]  A difficulty with this approach is that the Company, through derivative plaintiffs, will be developing evidence, including, presumably, deposing directors and seeking to demonstrate culpability for the very conduct which has precipitated the related litigation.[5]

A stay of this matter until November 15, 2015, is appropriate to afford the Defendants, including the Company, which is a Nominal Defendant in this action, some time to deal with the related litigation.  The decision to stay this derivative action involves a balancing of important and competing factors.  Before expiration of the stay, the Court should revisit the status of the related litigation and determine, to the extent that it can, when those cases are likely to be brought to a close and how their progress might impact this action.  Although director conduct may be a component of any remedy the Plaintiffs achieve here, it seems reasonable to anticipate that monetary liability will be the primary consideration.  As noted,

---

[4] Depending upon the circumstances, these concepts may be worth consideration as the related litigation moves forward.

[5] The cases all involve coal ash releases—what was the cause; what was done (or could have been done) to avoid the releases; what were the consequences; who, if any, was at fault?  Creative pleading in this derivative action will not avoid the substantial overlap with the related litigation.  *Cf. In re Molycorp, Inc. S'holder Deriv. Litig.*, 2014 WL 1891384 (Del. Ch. May 12, 2014).

resolution of the liability question in the related litigation will focus and facilitate this action. As time goes by, some of those factors supporting a stay likely will become less persuasive.

Accordingly, this action is stayed until November 15, 2015. For cause, any party may move to vacate the stay.

In order to revisit the appropriateness of a stay, counsel are requested to submit status reports on the related litigation during the last week of October 2015.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ **John W. Noble***

JWN/cap
cc:     Register in Chancery-K